The final case on our call the docket for the November term is agenda number 23 case number 1 1 0 1 9 9 and 1 1 0 2 0 0 Nancy Howell at all versus Sherry Good morning, your honor. May it please the court. My name is John Daly. I am the associate general counsel for Southern Illinois Hospital Services, DBA Heron Hospital, Carbondale Memorial Hospital, and St. Joseph Memorial Hospital. The sole issue in this case before us today is whether the common fund doctrine applies to liens arising pursuant to the Illinois Health Care Services lien act. The common fund doctrine in the past has never been found to apply to a statutory lien and its application was specifically rejected by this court 31 years ago in the Maynard v. Parker case. The lower court in this matter, however, ruled that the common fund doctrine applies to health care liens as a result of what it termed was the expansion of the doctrine in the 2002 decision by this court of Bishop v. Burgard. By applying this expansion, or what they termed expansion, to the common fund doctrine, we have effectively overruled the Maynard case by misinterpreting the decision in the Bishop case. We respectfully request in this court reverse the decision of the appellate court by following the Maynard case and find that the common fund doctrine is inapplicable to liens arising under the health care services lien act for both the reasons of the Maynard case and the statute itself. Mr. Daly, did the hospitals benefit from the settlement proceeds without participating in the creation of the fund? Well, I think that's a two-part question, Your Honor. First off, what do you term a benefit? The hospital provided services to the plaintiff and we, you know, are being paid for those services. If you compare that to a subrogation lien, the insurance company is paying for the services on behalf of the injured party, and then they're seeking to get refunded from those or from the settlement of the plaintiff. Without the attorney creating the fund, then the insurance company or subrogation lien is never going to be paid. The plaintiff is never going to have to pay to the insurance company for the subrogation lien if the attorney doesn't create the fund in the first place. However, in a hospital situation, since we are a creditor as opposed to a subrogee or subrogor, we're going to have a claim against the plaintiff regardless of whether the fund is created or not. So therefore, I'm not sure that we're receiving a benefit by simply getting paid for our services just like the attorney is getting paid for his services through the contract that he has or through the Illinois Healthcare Lien Services Act. Counsel, does satisfaction of the lien extinguish the right of recovery against the plaintiff? Are you talking about, I'm sorry, are you talking about the health care lien or the Right, the lien the hospital has. Is the full amount of your lien extinguished by payment from the Common Fund Doctrine, even at a reduced amount, or do you still have a right of action against the plaintiff for the difference? If the hospital's lien is not, I'm sorry, if the hospital's total outstanding bill is not paid through the lien act, then the hospital, yes, has the right to go back after the plaintiff for what is owed. It depends on whether what the hospital is owed exceeds 40% of the settlement that the plaintiff made with the tort fees are in the case. If the health care liens do not exceed that 40% limit, then yes, the hospital is paid in full and the plaintiff doesn't have to pay anything. If they do, then there's going to be an amount left over that the plaintiff may be liable for because the hospital is a creditor. So it doesn't matter what the settlement is or whether the attorney creates a settlement, the hospital still is owed. Plaintiff's liability to the hospital is not dependent upon the attorney creating the fund, if that answers your question. Right, but you might not get paid at all if you didn't have some money. I mean, if the plaintiff's attorney didn't take action to create the fund, create the money, get the settlement. That depends on what the plaintiff has. If the plaintiff doesn't have any assets, then yes, you are correct that we may not get anything. But his creating the fund is not depending on whether we're owed the money or not. Because if you look at the subrogation lien, which is this critical difference here, the subrogation lien doesn't get paid anything unless the fund is there. They can't go after the plaintiff for the money that they paid on behalf of the plaintiff. They're not providing a service, so to speak, as the hospital is or the attorney is. They're simply paying the money to the hospital for the medical services based upon their contract that they have with the plaintiff himself. Because they have the subrogation right, they have the right to step in to the lawsuit and to step into the shoes of the plaintiff and prosecute that action. However, on the other hand, the hospital doesn't have that right. We have no rights against the tortfeasor in this case. And we're not able to intervene in the lawsuit to go after the responsible party for the plaintiff's injuries. Therefore, our lien is not the same as the subrogation lien for purposes of applying the common fund doctrine. I mean, it's pretty easy to apply a common fund doctrine to a subrogation lien. You have an insurance company that's paying the medical providers out of the policy. And then they come around with the contract and say, oh, wait, plaintiff, you now have to reimburse us because you got paid by the original tortfeasor. But since, you know, we didn't want to participate in that, we chose not to participate in that case. Therefore, you still owe us the money. On the other hand, the hospital cannot do that. They can't say to the plaintiff, we're going to step in your shoes and we're going to prosecute this action. I think it comes down to the element or the elements of applying the common fund doctrine. One, the plaintiff creates a fund. Well, that occurs here. There's no question the plaintiff has created a fund. Secondly, the claimant didn't participate in the creation of the fund. I think that's where the analysis between the subrogation lien and the health care or creditor's lien is the biggest difference. Because the subrogation lien, the subrogee, can step into the shoes of the plaintiff and prosecute the action. Therefore, they have the ability to participate in the claim or in creation of the fund. The hospital, on the other hand, cannot. We do not have subrogation rights to step into this lawsuit and have, you know, have our bill paid by the tortfeasor. And that's, you know, one of the biggest differences. It doesn't meet that element of the common fund doctrine. Mr. Daley, I understand your position of creditor versus subrogate. I just want to make sure that you agree with where the court is with respect to the case law. Maynard, as you say, supports your position. Correct. But you would agree that was like a two-page case without much analysis, right? That is correct. And then Bishop undertook a more detailed analysis. And that case did involve a subrogee. In fact, as far as my research goes, all the cases seem to that have applied the common fund doctrine have involved subrogees. That is correct. But would you also agree that none of the cases, including Maynard, including Bishop, expressly state that the doctrine is limited to subrogees? No. In fact, the doctrine is not limited to subrogees. The doctrine has been applied to class action suits since the early 1900s. This court didn't recognize the doctrine in the subrogation lien cases until 1977 with the Bexar v. State Farm case. And once that was in that case, State Farm brought up the health care liens or medical liens at that time and said, if you find that the common fund doctrine applies to the subrogation lien, then you're going to have to find that it applies to the medical liens also. Well, the court said, no, that's not the issue before this court. So we're not going to rule on that. Then along comes Maynard. And I think the court, yes, it was a two-page opinion without much analysis. But if you also look at the appellate court's opinion, there was much more analysis in that opinion than there was in the Supreme Court. Well, we wouldn't be doing violence to any of the precedent. It's a matter of whether we agree with your credit or subrogate distinction or what we hear from the other side on that, right? I think for that portion of it, that is correct. But you also have to take into consideration the Health Care Services Lien Act and how that applies to what the distribution is. Under the Health Care Services Lien Act, while it never mentions the common fund doctrine, they do provide for an attorney to get paid. And they changed the common fund doctrine in 2003, which was just after the Bishop case. So the General Assembly knew all of the cases that were coming down ever since 1977 when they changed the act. And what they did when they changed the act was to take eight different lien acts that, you know, physicians, hospitals, psychiatrists, there was, you know, eight different lien acts, and they combined them into one. And they said, okay, before each of you could get one-third, which is the reason they changed it, because of this court's decision in Burl v. Southern Trust, where the plaintiff didn't receive anything after the application of the attorney's fees and the lien acts. So they say, fine, you have one lien act, all of you are put together, and you're, I'm sorry, you're separated into two separate parts, one being the providers, one being the professionals. Those two groups each get 20%. If the professionals' bills don't add up to the 20% or more, then whatever is left over goes to the other side. So the health care providers are going to get 40% of the settlement. And that's if their bills only exceed 40% of the settlement. If they don't, as I said before, that the bills are going to be completely paid or the liens are going to be completely paid. Under those circumstances, does the trial court have the authority under the act to actually reduce the hospital statutory lien? Not under the act, it does not. Unless it's found not to be reasonable. And the act itself says for the reasonable charges by the hospital, they get paid. And the only one that can waive or reduce the lien of the hospital is the hospital or whoever is the lien holder. And it states that under the act. So if the hospital bills are not reasonable, then plaintiff's counsel can come in and say, you know, prove them up. Prove to us that they are reasonable. And the trial court can then reduce the lien. But other than that situation, I don't believe they have the right to reduce it. So getting back to the act, they created this pot of money being the settlement. They're given 40% to the health care providers for their liens. And they're giving 30% to the attorneys. The attorneys actual or normally the attorney works on a one-third basis. The General Assembly looks at this and said, no, we want to make it fair for everybody. So if the health care providers are going to have to take less, then we want the attorneys to take less also. So they reduce their lien to 30% with the remaining 30% going to the plaintiff to make sure that he gets money out of this settlement. In the General Assembly, they looked at the attorney's fees. I think they contemplated the attorney's fees. And by reducing them, I think they basically said the common fund doctrine doesn't apply here. We've made a statutory scheme. We've set up these different pots of money, as they put it. And everybody gets paid. Now, if you apply the common fund doctrine, I think you're contravening that statute. Because what happens when it applies? Well, there's no express abrogation of the common fund doctrine anywhere in this. No, there is not, Your Honor. No, there's not. Without any express abrogation, what would be the significance of that? Wouldn't we just be applying, then, the common fund doctrine? I'm sorry. What would be the significance of there not being any express abrogation in the statute, if any? I'm not sure that the fact that they didn't put it in there means that you can apply it or not apply it. I think you have to look at the legislative intent behind the statute itself. And in this situation, I think they've allowed the attorney's fees. They've allowed the attorneys to get paid. I think if you apply the common fund doctrine on top of that, you're contravening the intent of the General Assembly in creating the statute in the first place. Because if you apply it, then what happens? Well, the health care providers, then, are one-third of what they would receive of the 40 percent is taken from them. So now they're down to 26 and two-thirds percent that they got for their health care lien, whereas the statute itself says they received 40 percent. So you're taking away what the legislator intended, and you're taking it from the health care providers and giving it to the attorneys. Or an inmate attorney supposedly is giving it to his client. And I'm not sure, you know, there's RDC actions out there where the attorney didn't do that, but I'm not sure that's really relevant here anyway. You're saying, well, the common fund doctrine is an equitable doctrine, though. And so you're saying it's not equitable for attorneys to recover under the doctrine, is that right, from the hospital? I'm saying it's not equitable because the legislature has already provided an equitable apportionment between the parties to the action. But under the fund doctrine, because it's an equitable doctrine, you're saying it would be not equitable for attorneys to recover from the hospital. Is that what you're saying? I'm sorry, I'm not. Can you repeat the question? I'm not following it. Because it's an equitable doctrine, the common fund doctrine, then you're saying that it's not equitable for attorneys to recover from the hospital. I'm saying it's not equitable for them to recover from the hospital liens. You know, if we're going to be equitable here, who is getting... That's what I'm saying. Is that what you're saying? Yes. Yes, I am saying that, that it's not equitable to take from the hospital. The hospital's providing the service in the same manner that the attorney is providing the service. Each party expects to be paid for their work. The attorney has a contract with his client saying he receives one-third of the recovery. The hospital has a contract with its patient saying here's what we're going to charge and we expect you to pay these reasonable charges for our services. The common fund doctrine for the equity portion of what we were discussing applies more in the insurance company is coming back and they can only receive the benefit if the attorney creates the fund. I think we're back to when you create the fund, who is actually getting the benefit? So if you apply, you know, an equitable or if you're saying that it's equitable for the attorney to take money from the hospital, I would disagree with that. I think we're both providing services and I think there's no reason to favor the attorney over the hospital in this case or a physician or any other health care provider. As my time is going short, in this case the relationship of the parties is still important. The fact that the common fund doctrine elements not bent the clear statutory language of the act in this case should be more than enough to find that the lower court's decision must be reversed. As was stated in Maynard, the allowance of counsel's fees from the fund is capable of great abuse and should be exercised with most jealous caution in regard to the rights of creditors. In this case, it is better to leave those concerned to contract for the compensation to be paid for the services rendered or received. Accordingly, I respectfully request this court to reverse the appellate court's decision and find that the common fund doctrine is inapplicable to liens under the Health Care Services Lien Act. Thank you. Thank you, Mr. Daly. May it please the court, counsel. My name is John Foley and I'm representing Sherry Wendling here today. I have co-counsel, Mr. John Womack, representing Ms. Howell. We will be sharing our time in arguing the case for them today. The common fund doctrine is an equitable action based on the attorney's rights which prevents unjust enrichment. It does not shift fees to adversarial parties but ensures that any party that seeks to avail itself of the fund must contribute a pro rata portion of the cost of producing the fund. By portioning the cost to those who benefit from it, the doctrine prevents unjust enrichment. This court's decision in the Bishop v. Burgard case is the controlling standard for the application of the common fund in this state. It affirmed its position as expressed in Shultz v. Schneider that the quasi-contractual right to payment of fees for services rendered belongs to the attorney who rendered the services. It establishes that the common fund doctrine applies to claims of any kind by holding that for purposes of applying the common fund doctrine, it is irrelevant that the party who benefits from a lawyer's services has a right to compensation, be it an undifferentiated right of reimbursement or subrogation as was asserted there. Mr. Foley, how does the hospital benefit from your services? The hospital benefits from our services by being paid. The reason that they're paid from the fund is because the lawyer helps create the fund. But wouldn't they have a right to be reimbursed even without the fund, without your services? The fact that they have a right to collect the bill isn't the same thing as collecting the bill. And that's the benefit that they receive from the creation of the common fund. The hospital has a bill that it wants to collect from a patient. That relationship is unaffected by the common fund doctrine. What is at issue here is what about the lawyer's services in creating a fund of money from which they receive a benefit by being paid their bill? That's the benefit that they receive. But don't they stand in the same position you, the lawyers do, with a lien? They may have a lien, but that may be an unrecognized lien. They may never recover their money from the patient or from any other source. So the point, I think, of the common fund is that the hospital is doing exactly what the fund is designed to prevent. It is taking a fund that's created by a lawyer without participating in the creation of the fund and benefiting from the fund. You asked the hospital earlier the same question. Is that not a benefit? Well, or what is the benefit? The benefit is in receiving money, which is exactly the purpose of having a lien, is to try to collect money. A lien is an assertion of a right to be paid. And that's what they're, that's what is being accomplished in part by the creation of the fund. Well, the fund is an equitable doctrine, so how is it equitable for the attorney to recover from the hospital? They then have a relationship. It's equitable in the sense that the attorney does work, which creates money that they are paid from. And that's the reason that it is equitable. There is no contract. It's a quasi-contractual relationship. So the benefit to the hospital is obviously the fact that their role in the entire creation of the fund is this. They hold out their hand at the end when the lawyer's finished his services and the case is concluded. And there's money available. They want money. They want to be paid. And so the equity in that situation is if you receive the benefit of those services by the lawyer, then it's only fair that you should share in the cost to the fund of the lawyer's fee. The lawyer's fee is against the whole fund. Typically, the lawyer's fee in a personal injury case would be one-third of the total fund. What the application in this circumstance does is it apportions that third so that the hospital pays a share of the third of the lawyer's fee rather than the patient paying all of the lawyer's fee and the hospital reaping some of the benefits of that fund. That's the equity in this. You mentioned Beauregard. How did that expand the application of the Common Fund? I'm sorry, didn't you? You mentioned Beauregard, the case Beauregard? Bishop v. Beauregard. Yes. How did that extend the Common Fund? The Common Fund applies irrelevant of the party who benefits from the lawyer's services has a right to compensation through subrogation, as was asserted in that case, or a right to compensation under some other theory. All right. Some other theory to me takes in a lot of ground, including a claimed lien in a case. This clearly establishes that the real question in applying the Common Fund doctrine is whether the claimant obtains the benefit of a lawsuit and the lawyer's efforts without contributing anything to its costs. And the other side has argued, I believe, has argued that this allows the attorney to recover more than 30 percent. You've just told me that that doesn't happen, that what it means is they may get less than 40 percent, but that 40 percent is a part of the 30 percent you recover. Is there any aspect of double or enhanced recovery here? Well, they brought that up, and they've even suggested that the plaintiff's lawyers are unethical for attempting to charge their entire fee in cases like this by suggesting that there's a double recovery. But in fact, the analysis is, as I said a minute ago, when you have a, the lawyer charges a fee against the entire fund. If you practice the plaintiff's law, then here's the contract that you enter into when you enter into engagement with a client is they agree to pay you a percentage of the total recovery in the case. If it's $10,000, it would be a third of $10,000. So in this case, the lawyer is going to charge a percentage of that total fund. That's what the lawyer's going to charge. He's not going to charge more than what he's contracted for. What the common fund doctrine allows is for that amount to be apportioned fairly. In other words, when we're dividing up the money from the common fund, the lawyer's going to charge a percentage of that and the lawyer charges a fee. Should the lawyer's fee fall entirely on the plaintiff or should that be shared by the other people who benefit from the created fund? Particularly when those people do not participate in the litigation or the claimant's actions. There's a slightly different way of looking at the equities, right? We do have a debtor-creditor relationship here, right? There is a debtor-creditor, there may be a debtor-creditor relationship. The plaintiff owes the hospital money. They may owe the hospital money. The lien is simply an assertion of a claimed right by the hospital to hospital bills. Those hospital bills, and counsel has even said this, may or may not be the actual bills in the case. The court always has the option of finding that they are not legitimate medical bills. Okay, let's just assume for purposes of the example that they're the legitimate medical bills. They contact the plaintiff before the suit, the plaintiff says, I can't pay. So they post a lien, goes to trial. So when we're talking about the equities of the plaintiff in this case, not bearing the full brunt of the fees because the hospital is getting some benefit, my question is on the equities, what is the attorney doing any differently for purposes of that lawsuit? I mean, you're going in there to try to get the best settlement or best verdict you can, right? That's absolutely the lawyer's job. Yeah, that's the job. You're not doing anything different whether there's common fund applies or doesn't apply. We're not trying to be fair. We're trying to get the most money for our client. That's exactly right. Right. So when we deal with the equities and it's a debtor-creditor relationship, and on one side of the ledger you're saying the equities involve the debtor not having to pay the full brunt of the fees and the creditor who, if the judge, going back to your example, if the judge says these are the legitimate bills, the creditor having to pay the brunt of those, a portion of the brunt of those fees, how do the equities balance in that? Well, you know, when you have a plaintiff's lawsuit, there are various damages that you're advancing on behalf of your client. One of the damages that you're advancing are the medical bills associated with injuries that may have occurred in your case. In effect, you become the collector of the bills. Now, who receives the benefit of your efforts as a lawyer to collect those bills? Who receives the benefit? I would say the argument could be made both. It's both ways. It benefits the plaintiff because he has a bill that you're attempting to satisfy. But if the hospital comes in and says, well, wait a minute, before you give the money to the plaintiff who will then pay us the money that we're trying to find, now. But again, you would put those medical bills in even if you didn't get a portion of those fees because it may relate to further damages, pain and suffering or what have you, as they assess the medical bills vis-a-vis the overall damages in the case. You're still, I mean, you're not contending you would do anything different if you're not going to get a portion of the fee from the hospital in this case. You would have done exactly the same thing. Correct. That's correct. I mean, when a case is presented on behalf of your client, you have to take into account all aspects of it, including the bills that the client has that are associated with that. You aren't necessarily arguing about the merit of the alleged bills. Your job is simply to protect your client from having to suffer the burden of having those bills unpaid in the sense that the jury doesn't consider that. So yes, you would have to advance those to them. Right. And I'm only bringing this up since we've been talking about equities in the case. Not whether or not the attorney for other reasons under the case law and otherwise should be entitled under the position you take. I'm just saying there are equities on both sides. Yes. I would say so. Well, I think the common fund doctrine specifically applies to the concept of quantum merit and unjust enrichment. Because all of the cases, all of them talk about those theories. And these are precepts in our law that have been in existence as long as there's been a law in this state. And that's the law of equity is what we're talking about applies in this instance. In the common fund doctrine, there have to be certain things done before the lawyer can advance a claim under the common fund doctrine. First of all, the fund has to be created through his efforts, his or her efforts. Then the claimant, the person who wants to claim something against the fund could not have participated in or contributed to the creation of the fund. And then they have to receive a benefit. And all of those factors exist in this case, all of them. But isn't Bishop distinguishable, though, from this case? Because I think maybe the appellate court was mistaken, but the common fund doctrine reduced the amount in Bishop. The administrator of the plaintiff's insurance benefit plan received from plaintiff's settlement fund as reimbursement for the medical benefits paid on plaintiff's behalf. And so the key to Bishop, I think, was but for Bishop's action, the efforts of her attorney, there would have been no fund from which the plan could have retained reimbursement for their payout on benefits. And so the difference here is that the hospital is a lien holder outside of those, that situation. Well, I think that the Bishop court recognized that that had been a distinction in the past and recognized that there was a difference in the past, that fact. But in its language, it broadened the scope of the application of the fund. There is no other way to interpret the statement that it applies not just to subrogation claims, but to rights to compensation under some other theory. Those are the court's words. I would also say that the Bishop court pointed out that the application of the common fund does not affect the underlying relationship in that case between the plan participant and the plan itself, the ERISA plan, because it could not. First of all, that's a federal law. But the court pointed out that we're not saying you fund don't have your relationship with this fund participant plaintiff. What we're telling you is the reason you're getting money is because this lawyer created a fund. And you want part of the fund, but you didn't participate in the creation of that fund. But the plan never would have had an outside opportunity to recover but for the fund. I don't know if it would or would not have had the opportunity to do that. I don't know if it could proceed on its own under the terms of its own contract with that plan participant. Perhaps they could. Perhaps the hospitals could. But that misses the point that if you do nothing and someone else does something for your benefit, that's the whole concept of quantum merit in our law. The hospital has argued that the healthcare services lien act does not provide for reduction of liens under the common fund doctrine. Again, the common fund doctrine is based upon the common law and equitable principles. And those still apply even when they are not specifically enumerated within particular statutory schemes. The hospital's line of argument suggests that if a common law rule or an equitable remedy is not set out within the text of the statute, then it would no longer be applicable. That simply misconstrues the law. The hospital also argues the legislative history of the healthcare services lien act reflects the legislator did not intend for the common fund doctrine to apply to liens created under the act. The General Assembly, it admits, did not discuss the common fund and did not incorporate it into the act. Again, the common fund, the common law and equitable remedies still apply even when not specifically enumerated within the statute. The statute is enacted, when the statute's enacted, it's presumed the legislature had full knowledge and notice of the common fund law by statute, it must do so specifically. I'm going to sit down. I've taken up almost all the time. I'm John Wommack of the Council of Ministers. Apparently equity doesn't apply to the guy who goes second. In answer to your question, Judge Kilbride, and your question about, I'm sorry, Justice Thomas, the question about the equity, the concept here is should the hospital get paid? Of course they should. But the equitable issues apply only to the fund after it's created. And the equity is the fund, the three pronged test is who did it, did they benefit, and should they pay? And in this court, as John pointed out, said in the Bishop case, that the basis, it's basically said it's a difference without a distinction. And so if you apply the equities after the fund is created, and that's the only way you can apply them. But I think the point that's been sort of passed over here is the hospital's desire to collect from the fund is voluntary. They don't have to. They can file their own lawsuit, they can do what they want to do, and they are not bound by the fund. If there's any money, if they take the fund and don't get full payment, they can go after it thereafter. Clearly they benefit from being prepaid or being paid earlier. But they must benefit or they would not choose to elect to comply with the terms of the lien. If they enforce their lien, they do so voluntarily. If they don't want to enforce the lien, they're not affected by one way or the other, they can wait until the client puts the money in the bank, sue the client, go through all those steps. But do they benefit? Absolutely they benefit. And is there equity there? The equity is in the creation of the fund that they go after. So satisfaction of the lien with the common fund would not extinguish their right of recovery? It does not. It clearly says so in the statute and it's always been the law. But wouldn't it in fact cause the injured party to have more responsibility after this allocation than before? Because they'd be getting less than the 40 percent. Say they get 30 percent. No. So that 10 percent would be 10 percent less taken off the bill that the injured party owes to the hospital. There is nothing taken off the bill. They have no obligation. The fund set forth how you allocate the funds that are received has nothing to do with the bill. If they owe $10,000 before, they owe $10,000 after. You give credit for what they have received out of the fund. They're sued for the rest. But if they got $5,000, not $10,000, they owe their own $10,000, they would have gotten, their lien would have been satisfied to $5,000 worth. So the plaintiff would be, I mean the injured party would be responsible for $5,000. If they only get $4,000, isn't the injured party responsible for, they have $6,000 left? Absolutely, but you're talking 6 of 10 or 4 of 10 or 5 of 10. You're talking about a debt that's owed for $10,000. The lien doesn't change it at all. It has no effect on it. But the plaintiff's recovery is going to be lessened because if they have an amount of money, then that's going to be able to be available to pay. No, ma'am. Where you're wrong is simply that we're talking about the same amount of money. If the debt is $10,000, it remains the debt no matter what. Any money that is taken out of the settlement has to be used to discharge the debt. And attorney fees would decrease the amount taken out of the lien. But it doesn't change the law, doesn't change the amount owed, doesn't change anything. You're still talking about a $10,000 debt. If you're using your figures as $4,000 paid out of the lien, the hospital can still sue for 6. It doesn't change anything. The lawyer is going to get paid. The client is going to get an amount of money. The concept basically is the definition of when the fund exists. It should exist, and you should be talking about the fund after fees are paid. If you've got a $75,000 settlement, the lien should apply to the 50, not to the 75. But with all due respect, it doesn't change anything. The hospital chooses to enforce the lien or not, chooses to comply with the terms or not. Their amount is not discounted. They don't get shortchanged. Nothing happens to them, and nothing happens to the client. The client owes that bill before. He gets credit for that which is paid. He gets the benefit of his lawyer's work, as does the hospital. And there's just no – it's equity. David talked about it in Psalm 95. It's been around a long time. And it's been around in this court a long time. It's been around in the United States. One of the cases cited by somebody who is smarter than I went back to the 1800s. It's worked. It works here. Mr. Womack? Regrettably, your common fund allotment of time has expired. Mr. Daley, could you explain the last answer that Mr. Womack gave us? Can you repeat it? Maybe like a consultant. Is the plaintiff still responsible for the entire lien, whether or not the hospital gets some money from the common fund, and then subsequently when the common fund amount is given and the plaintiff has her or his money, can the hospital still go after the plaintiff? Yes. The hospital is going – and John, in a roundabout way, or Mr. Womack in a roundabout way was getting to that, I think. If we have a $10,000 bill and the lien act allows us to get $5,000, using Justice Garmon's example, the $5,000 is still going to be owed by the plaintiff. The hospital can go after the plaintiff for that amount. If the application of the common fund only allows us to get $4,000, then, yes, the plaintiff is going to be responsible for the remaining six. So it is to the detriment of the plaintiff. Now, that's if you assume that the attorney is keeping the money that he gets under the common fund doctrine, which contractually they're not supposed to do. But my question is, since the act – or my position is, since the act only allows the attorney to get 30%, but his contract allows him to get one-third, what happens to that other third, or that other 3%? Does the client get that? I mean, we may not be talking about a lot of money in certain situations where the settlement is not very large, but what if the settlement is large? And you've got that 3% hanging out there. Does the attorney keep that? No, that's the 3% that is coming off of – is going to be added back onto the hospital bill. So the client is going to be still owing that amount of money to the hospital. Hopefully that answers that question. But we have to put into the equation that – and I think this is where Mr. Womack was going – if the common fund applies, right, and there's $10,000 and he's getting, let's say, 30%, so the hospital is getting $7,000 and $3,000 is going into the common fund, right, or to the attorney? Well, no, if it's $10,000 – let's say it is $10,000. The attorney is going to get $3,000, the hospital is going to get $4,000, and the plaintiff is going to get the remaining $3,000. That's what would happen without applying the common fund doctrine under the act. But you still have the right to go after, as you just indicated, go after the plaintiff for the balance. That is absolutely correct. The statute specifically provides for that. But what the attorney has provided for the plaintiff is they're not – it's kind of a wash, isn't it? I mean, they're not paying attorney's fees on the portion that the hospital had to pay attorney's fees on. Yes, it is kind of a wash that the plaintiff is going to get the money. The problem is the hospital cannot go after that portion of the settlement that the plaintiff receives. We have to go after whatever other assets they have. If the plaintiff doesn't have any other assets, then they can file for the charity care or the hospital can simply just write it off and forget about it. And that happens in a lot of situations. And, in fact, in my situation, and not in this case, but in other cases, I have simply told the plaintiff, pay us the lien and then fill out a charity care application. If you qualify, the remaining balance is going to be taken off. So you're not going to owe that. So I'm not so sure that's the issue. I think what you need to look at is what really happened in Bishop. Did they expand the doctrine? I mean, if you look at the case itself, it deals with ERISA. And the only difference between Bishop and the Schulten's case is that in Bishop, they put in a paragraph that said, we're not going to be responsible for attorney's fees. The court looked at it and said, okay, great. But ERISA doesn't apply. Once we get past ERISA not applying, Bishop is nothing more than a regular subrogation lien case. What about the words the subrogate or claimant benefited or will benefit from the fund? Did they extend the subrogate? I don't think they didn't even talk about hospital liens or statutory liens throughout the entire opinion. That issue wasn't before the court. Well, we have to give some meaning to the word claimant, right, or it wouldn't be there. That's correct. I would assume you have to give some meaning, but does it mean you have to give it a meaning that now it applies to statutory lien holders? I'm not sure that's what the court meant. And maybe they did. I don't know the answer to that question. But my contention is that the statutory lien issue and the common fund doctrine were not before the court in Bishop. And if they're expanding it to that, I would think they would at least mention that this applies to statutory liens. And it wasn't. And they didn't mention Maynard either. Maynard had been around for a while. They acknowledged it, though, didn't they? I don't think they ever said one word about it in the entire case, although they did mention subrogation close to 17 times. They'd never mentioned statutory liens. So, you know, my problem is that they're using the lower court used Bishop to say this expanded the doctrine past the subrogation liens when Bishop was nothing more than a subrogation case. It was a subrogation lien case. And it's very easy to apply the common fund doctrine to that situation. You've got all three elements met. In our case, the elements are not met. We cannot participate in the creation of the fund. We're not allowed to. If we were, then maybe it could be met. But we're not allowed to participate in it. We have no rights against the third-party tort fees. So we cannot get into this case. The insurance company can. And, in fact, they can avoid the common fund doctrine. They can simply send what's called a tenny letter to the plaintiff's attorney and say we're going to participate in this. We don't want you to represent us. And then they go and they participate in the litigation. They intervene in it. So they can avoid the application of the common fund doctrine. Under our situation, we can't even do that. So you're going to say we're automatically subject to the common fund doctrine, even though you're not allowed to participate in it. But because you're not allowed to participate in it, you meet that element. Talk about equitable. That's not equitable to the hospital. If we had the right to participate in it, maybe we would. Maybe we would get involved in it. Maybe we would intervene in it. And maybe that should be the test that the legislature put in. But they didn't. And we're looking at the legislative act that was put forth and saying that health care liens get 40 percent, attorneys get 30 percent, and the plaintiff gets 30 percent. I think if you go outside of that, you're contravening the intention of the legislator and putting forth the Health Care Services Lien Act. Is it true that if we agree with the appellate court, the attorney would receive 30 percent of the total fund plus 30 percent of the hospital's share of the fund? One-third of the hospital's fund. One-third. Yeah, but under the ethical rules, the attorney would most likely give that money to his client, which is what we were talking about earlier on a wash. Is it required? You said most likely. Is it required? Well, under his contract with his client, I think it would be required. That's not to say it hasn't happened before where the attorney didn't. In fact, there was a 2006 ARDC case where the attorney didn't give it, and he said he didn't give it to the client because he went to a seminar that was put on and said you didn't have to. But that would be unjust enrichment then if he did. I'm sorry? If he kept it, it would be unjust enrichment. Well, I definitely believe it would be unjust enrichment. The problem comes in, what if the attorney has a contract that says I get 40 percent? And, you know, there are contracts out there. Just because the standard is one-third doesn't mean that's what every attorney follows. What if he has a contract for 40 percent? Does he keep the 40 percent, or does he take the 30 percent and give the rest to his client? I don't know what they would do, what they're required to do. I'm not even sure of that. If you've got a contract that's greater than the amount that's provided for under the statute, which is why I think the common fund doctrine wouldn't apply to this statute. If the legislator had wanted it to apply, I think they're very capable of putting it into the statute as they've done it before. In fact, Bishop recognizes that the General Assembly has put this common fund doctrine into statutory provisions. They did it in the, I believe it was the CHIP Act, and in several others. So they know how to do it, and they are aware of it, and they understand that the common fund, you know, doctrine is out there. The fact that they didn't put it in would seem to me, you know, they didn't want it in there. Thank you. Thank you. Mr. Daly, Mr. Foley, Mr. Womack, we thank you for your presentations today. I'm not sure I accurately identified this case when I called it. There's five different parties, so let me try again for the record. Case number 110199, Sherry Wendling, and case, consolidated case 110200, Nancy Howell, both against Southern Illinois Hospitals, are taken under advisement as agenda number 23.